IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHAS SIMONSON,

                        Petitioner,

     v.

RANDALL HEPP, Warden,
Jackson Correctional Institution,

                    Respondent.

REPORT AND
RECOMMENDATION

07-C-397-C

---

## REPORT

      Chas Simonson is an inmate at the Jackson Correctional Institution who was convicted in 2002 in the Circuit Court for Dunn County for first degree sexual assault of a child in violation of Wis. Stat. § 948.02(1).  He has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, asserting that he is entitled to federal habeas relief because the trial court violated his right to fundamental due process by:  1) denying him the right to present a defense when it excluded testimony about an alternative cause for damage to the victim's hymen; and 2) relying during sentencing on inaccurate information about recidivism rates.  Respondent acknowledges that this petition is timely filed and that petitioner exhausted his state court remedies as to the claims in his petition.  Because I agree with respondent that the state court of appeals' decision on the merits of petitioner's claims was not contrary to or an unreasonable application of federal law and was based on a reasonable determination of the facts, I am recommending that this court deny the petition.

One minor housekeeping matter needs mention. After Warden Hepp responded, petitioner moved to expand the record to include briefing and other supporting documents related to petitioner's motion for postconviction relief in the circuit court. *See* dkt. 7. Petitioner attached the documents to his motion. Because respondent does not oppose the motion, I am recommending that this court grant it.

From the state appellate court decision and the record of the trial court proceedings submitted by the parties, I find the following facts:

FACTS

Petitioner's jury trial commenced on January 30, 2002 for the alleged first degree sexual assault of his seven-year old daughter. The child first reported the alleged assault more than one year after it occurred. At trial, the state's witnesses included the victim; Julie Kennedy-Oehlert, a sexual assault nurse examiner; and Kristina Simonson, petitioner's ex-wife and the victim's mother. The victim testified that her father put his penis in her vagina. Kennedy-Oehlert testified that the victim's hymen was damaged by the insertion of something into her vagina. *State of Wisconsin v. Chas S.*, Case No. 2006AP598-CR, dkt. 5, Exh. E at 1-3. She also testified that:

> [B]efore girls have estrogen that tissue is very friable, very painful to the touch, thin, easy to rip and tear. And women are built to have a bony prominence that very much protects that area. So unless there is some pressure put directly on that tissue or near that tissue it generally stays intact.

> Trial transcript, dkt. 5, Exh. I at 273.

2

If a child doesn't have – if a young woman doesn't have an estrogenized hymen that tissue is considered friable, which means that it tears easily.  It's taut and tears easily as opposed to estrogen [sic] makes it big and fluffy and gives, gives it a give to it.

*Id.* at 276.

Petitioner denied the allegations and sought to present evidence that the victim's mother and grandmother damaged the victim's hymen when they tried to relieve her constipation.[1]  The trial court did not allow petitioner to present this evidence because he did not lay a proper foundation by soliciting expert testimony about whether the treatment could have resulted in a torn hymen.  *Chas S.*, dkt. 5, Exh. E at 3.

The jury convicted petitioner on January 31, 2002.  At the sentencing hearing on March 15, 2002, the state argued in part that although petitioner was not charged criminally, the pre-sentence investigation report showed that he was present and at least partially involved in an incident resulting in the criminal conviction of his friend for sexual assault of a 13-year old girl.  Sentencing hearing transcript, dkt. 5, Exh. K at 9 and 23.  The court stated that it placed little significance on the uncharged allegations and that they would have a negligible impact on its decision.  *Id.* at 23.  Instead, the trial court discussed the irreparable damage to the victim, the gravity of assaulting a seven-year old child and the need to protect the public, particularly the victim.  The court then stated the following:

---

[1]  The trial transcript shows that petitioner had medical records showing that the victim underwent rectal stimulation as a treatment for constipation.  Although petitioner did not seek to admit the records into evidence at trial, he hoped to question Kristina Simonson about this procedure.  In response to questioning from the trial judge outside the jury's presence, Kristina stated that she did not personally participate in this procedure.  However, her response implied that a nurse may have performed it.  *See* Dkt. 5, Exh. I at 243-48.

3

> But above and beyond that, based on my experience, individuals who undertake this type of behavior typically do it more than once with more than one victim, unlike charges like homicide where statistically the likelihood is they're never going to do it again.  But in these kind of cases, if it happened once, it's very likely going to happen again.  Or at least the temptation to do it again is going to be there.  So I see a very, very high need to protect the public.

*Id.* at 30.  The trial court sentenced petitioner to 10 years initial confinement and 10 years extended supervision, less than the maximum allowed for a Class B felony under Wisconsin law. *See* Wis. Stat. §§ 948.02(1) and 973.01(2) (first degree sexual assault of child under 13 years old punishable as Class B felony, for which imprisonment may not exceed 40 years and extended supervision may not exceed 20 years).

Petitioner filed a motion for postconviction relief, alleging the due process violations raised in his federal habeas petition.  A post-conviction motion hearing was held on December 19, 2005.  In support of his first due process claim, petitioner testified that his daughter had constipation when she was a year old and that he witnessed the victim's "mother and grandmother attempt to extract a stool 'by pressing on the vaginal and rectal areas, like they tried to pop a pimple.'"  Dkt. 5, Exh. E at 3 and Exh. L at 12.  Petitioner testified that his daughter was in pain and that he saw blood around her rectal and vaginal areas.  Postconviction motion hearing transcript, dkt. 5, Exh. L at 12.  He also testified that he did not witness anyone putting anything in the child's vagina, and he did not produce any medical records showing that her hymen had been damaged at that time.  Dkt. 5, Exh. E at 3 and Exh. L at 12.  With respect to his second claim, petitioner presented statistical evidence from the U.S. Department of Justice and other studies showing that the recidivism rate for perpetrators of incest (4-11%) is much

lower than that for perpetrators of other sexual assaults (25-40%).  Dkt. 5, Exh. E at 7 and Exh. L at 17-18.

The trial court denied petitioner's postconviction motion on March 9, 2006.  The court determined that it exercised appropriate discretion in excluding testimony about an alternative cause of the victim's damaged hymen.  In the court's opinion, without expert testimony, the jury would have to speculate as to whether rectal stimulation or pressure applied to dislodge fecal matter could cause tearing or disruption of the hymen because such knowledge is not within the realm of ordinary experience or common sense.  The court noted that any bleeding, pain or damage to the victim's hymen that was an unintended consequence of such a medical procedure would have been reflected in the victim's medical records, and no such records existed.  Dkt. 5, Exh. B, App. 4-5.

With respect to the second claim, the trial court stated that its belief that petitioner would reoffend was based on all the facts and circumstances of petitioner's case, including the impact on the victim, and not solely on "generalized information that child sex abusers are all likely to reoffend."  Dkt. 5, Exh. B, App. 13-14.  As such, the court found that it did not base its conclusion on invalid statistical information and instead relied on other information, including the pre-sentence investigation report, which stated that it was likely that petitioner would reoffend and recommended a longer period of incarceration than ultimately imposed by the court.  *Id.* at App. 14.

Petitioner appealed, and on October 31, 2006, the Wisconsin Court of Appeals affirmed the judgment of conviction and the trial court's order on his postconviction motion.  *Chas S.,*

dkt. 5, Exh. E.  The appellate court rejected petitioner's first claim, finding that his proffered evidence was irrelevant because he did not lay a proper foundation and presenting his alternative theory about the cause of the damage to the victim's hymen would have encouraged jury speculation.  *Id.* (*citing State v. St. George*, 2002 WI 50, ¶¶ 14-15, 252 Wis. 2d 499, 643 N.W.2d 777 (defendant's constitutional right to present evidence extends only to relevant evidence)).  Relying on *State v. Doerr*, 229 Wis. 2d 616, 623, 599 N.W.2d 897 (Ct. App. 1999), the appellate court concluded that expert testimony was required because making a causal link between the alleged treatment for constipation and a torn hymen is not within the realm of ordinary experience and common sense.  The court rejected petitioner's argument that Kennedy-Oelhart's testimony about damage from pressure applied near the hymen provided adequate foundation, explaining that this single reference would not "enlighten the jury to allow it to accept Chas's alternate theory."  *Chas S.*, dkt. 5, Exh. E at 4, ¶ 5.  The court noted that the nurse was not asked whether placing thumbs on the exterior of the vagina could result in the type of damage she found in her examination of the victim.  *Id.*

> With respect to petitioner's sentencing challenge, the appellate court stated the following:

> The trial court denied the motion for resentencing, stating that it based the sentence not on generalized information about the likelihood of child offenders re-offending, but on the facts and circumstances of this case.  The record shows that Chas continued to deny his guilt.  The court also received information that Chas had sexual contact with an unrelated thirteen-year-old.  The fact that perpetrators of incest may have a lower rate of recidivism than other sexual abusers does not establish that he presents a low risk to his children or others.

*Chas S.*, dkt. 5, Exh. E at 7.

6

Petitioner subsequently filed a petition for review, which the Wisconsin Supreme Court denied on January 9, 2007.  Dkt. 5, Exh. H.

ANALYSIS

I.  Legal Framework

This court's ability to grant habeas relief is limited by 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the  adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

When applying this statute, a federal court reviews the decision of the last state court that ruled on the merits of petitioner's claims, *Simelton v. Frank*, 446 F.3d 666, 669 (7th Cir. 2006), which in this case is the Wisconsin Court of Appeals.  A decision is "contrary to" federal law when the state court applies a rule that "contradicts the governing law set forth by the Supreme Court," or when an issue before the state court "involves a set of facts materially indistinguishable from a Supreme Court case," but the state court rules in a different way.  *Boss v. Pierce*, 263 F.3d 734, 739 (7th Cir. 2001) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "'A state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular petitioner's case' qualifies as a decision involving an

unreasonable application of clearly established federal law." *Id.* (*quoting Williams*, 529 U.S. at 407-08). An "unreasonable" state court decision is one that is "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002).

A state court determination is not unreasonable if the court "takes the rule seriously and produces an answer within the range of defensible positions." *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000). *See also Lindh v. Murphy,* 96 F.3d 856, 871 (7th Cir. 1996) ("[W]hen the constitutional question is a matter of degree, rather than of concrete entitlements, a 'reasonable' decision by the state court must be honored."), *rev'd on other grounds,* 521 U.S. 320 (1997). The reasonableness inquiry focuses on the outcome and not the reasoning provided by the state court. *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997). A decision that is at least minimally consistent with the facts and circumstances of the case is not unreasonable. *Henderson v. Walls*, 296 F.3d 541, 545 (7th Cir. 2002). Under § 2254(e)(1), the state court's findings of fact are presumed correct, and it is the petitioner's burden to show by clear and convincing evidence that the state court's factual determinations were incorrect. *See Harding v. Walls*, 300 F.3d 824, 828 (7th Cir. 2002).

II. Right to Present a Defense

Petitioner contends that he was denied a fair trial as a result of the trial court's refusal to allow him to elicit testimony about a possible alternative cause for the victim's damaged hymen. Under the Sixth and Fourteenth Amendments, petitioner has a constitutional right to present witnesses and his version of the facts in his own defense. *Holmes v. South Carolina*, 547

U.S. 319, 324 (2006); *Taylor v. Illinois*, 484 U.S. 400, 408-09 (1988); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)*; Washington v. Texas*, 388 U.S. 14, 19 (1967).  Although the exclusion of evidence can violate a defendant's right to present a defense, this right is not absolute.  *Taylor*, 484 U.S. at 410-11; *Morgan v. Krenke*, 232 F.3d 562, 569 (7th Cir. 2000).  "[T]he exclusion of even relevant evidence does not automatically create a due process violation," because "states retain the right, also not absolute, to establish procedures for running their criminal trials."  *Morgan*, 232 F.3d at 569; *see also Holmes*, 547 U.S. at 324; *U.S. v. Scheffer*, 523 U.S. 303, 308 (1998).  Petitioner must comply with state procedural and evidentiary rules designed to assure both fairness and reliability. *Chambers*, 410 U.S. at 302.  Such rules do not violate an accused's right to present a defense unless they are "arbitrary or disproportionate to the purposes they are designed to serve." *Holmes*, 547 U.S. at 324-25; *Scheffer*, 523 U.S. at 308.

        In this case, the trial court excluded evidence of a possible alternative cause for the victim's damaged hymen as irrelevant because petitioner did not lay a proper foundation with expert testimony, and the appellate court agreed.  Petitioner does not dispute the need for expert testimony, *see* dkt. 2 at 14, but contends that Kennedy-Oelhart's testimony provided adequate foundation for the jury to infer that "squeezing hard stool against the vagina of a small child while pressing down on the vagina with one's thumbs could cause damage to the hymen," *id.* at 16.  Petitioner argues that her testimony establishes that the hymen of a young girl is easily torn and damage to the hymen may result from pressure put directly on or near that tissue.  The state court of appeals rejected petitioner's argument, explaining that Kennedy-Oelhart's single

reference to applying pressure on or near the hymen tissue would not "enlighten the jury to allow it to accept Chas's alternate theory." *Chas S.*, dkt. 5, Exh. E at 4, ¶ 5. The court noted that the nurse was not asked whether placing thumbs on the exterior of the vagina could result in the type of damage she found in her examination of the victim. *Id.*

As an initial matter, I note that petitioner cites state law regarding expert testimony in his supporting brief, implying that the state courts did not correctly apply it. Even if there was an error of state law, it is not this court's role to correct it unless the error rises to the level of a constitutional violation. *Morgan*, 232 F.3d at 567. Petitioner cannot get a second opinion on the application of state law through a claim under § 2254. *Bates v. McCaughtry*, 934 F.2d 99, 102 (7th 1991). The only question for this court is whether it was reasonable for the state appellate court to find that the exclusion of evidence did not violate petitioner's due process right to present a defense. *Id.*; 28 U.S.C. § 2254(d).

Petitioner asserts that the state court's requirement for such specific expert testimony was an irrational application of Supreme Court precedent regarding relevancy. *See McKoy v. North Carolina*, 494 U.S. 433, 440-41 (1990). In *McKoy*, the Court discussed the relevancy of mitigating evidence introduced in a capital sentencing proceeding and stated that:

> [I]t is universally recognized that evidence, to be relevant to an inquiry, need not conclusively prove the ultimate fact in issue, but only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

*Id.* at 440 (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 345 (1985) (*citing* Fed. R. Evid. 401)). However, as noted above, the Supreme Court consistently has affirmed a trial court's right to control and limit the admission of evidence, *Holmes*, 547 U.S. at 326-27; *Montana v. Egelhoff*, 518

10

U.S. 37, 42 (1996); *Crane*, 476 U.S. at 689-90, and traditionally has been reluctant to impose constitutional constraints on ordinary evidentiary rulings by state trial courts, *Crane*, 476 U.S. at 689.

The appellate court's legal conclusion in this case was not contrary to clearly established federal law. Although how the victim's hymen was damaged is a relevant inquiry in petitioner's case, it was reasonable for the appellate court to find that petitioner's posited explanation was irrelevant without more specific expert testimony. Kennedy-Oelhart made clear in her testimony that the victim's hymen was damaged by the insertion of something into her vagina. Although she stated that the hymen generally stays intact unless there is some pressure put directly on or near that tissue, it is not clear whether the alleged actions to relieve the victim's constipation qualified. Pressing one's fingers against the exterior of the vaginal and rectal areas is not necessarily the same thing as applying pressure to the hymen.

As an afterthought, petitioner argues that the state court of appeals did not discuss any legitimate state interest served by the exclusion of the evidence in this case. I disagree. The appellate court specifically stated that allowing petitioner to present his alternative theory without proper foundation would have encouraged jury speculation, and preventing jury speculation is a legitimate state interest. *Holmes*, 547 U.S. at 326-27 ("While the Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose . . . , well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors, such as unfair prejudice, confusion of the issues, or the potential to mislead the jury."); *see also Montana v. Egelhoff*, 518 U.S. 37, 42 (1996); *Crane*, 476 U.S. at 689-90. Requiring petitioner to lay a proper foundation for his alternative theory is well

within the norm and does not amount to the application of an arbitrary or overreaching procedural rule. *See Morgan*, 232 F.3d at 569.

Petitioner also asserts that the trial court made an unreasonable determination of fact in ruling on his postconviction motion by referring to an absence of evidence showing that the rectal stimulation to remove the victim's stool in fact occurred. Petitioner argues that the court ignored his offer of proof at trial and his testimony at the postconviction motion hearing. As petitioner admits, this court's review is limited to the decision of the last state court to rule on the merits of petitioner's claim – here, the state court of appeals. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (*citing McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)). The appellate court made no such factual finding and actually recited petitioner's offer of proof and postconviction testimony about the rectal stimulation without questioning its validity. Petitioner's argument fails because he has not show by clear and convincing evidence that the state court's factual determinations were incorrect. *Harding*, 300 F.3d at 828.

Because I find no error on the part of the state appellate court, I am not addressing petitioner's arguments related to harmless error.


III.  Sentencing

Petitioner contends that the trial court based his lengthy sentence in significant part on inaccurate information about recidivism rates for incest offenders. Defendants have a due process right to be sentenced on the basis of accurate information. *U.S. v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948). A sentencing court may consider a broad range of information in the sentencing process, provided that the evidence contains a

"sufficient indicia of reliability." *U.S. v. Polson*, 285 F.3d 563, 568 (7th Cir. 2002). However, a sentence must be set aside where petitioner can show that the sentence was based in part on false information. *U.S. v. Jones*, 454 F.3d 642, 652 (7th Cir. 2006); *U.S. ex rel. Welch v. Lane*, 738 F.2d 863, 865 (7th Cir. 1984). In order to make this showing, petitioner must establish that the information before the court was inaccurate and that the court relied on this inaccurate information in passing sentence. *Lechner v. Frank*, 341 F.3d 635 (7th Cir. 2003).

At the sentencing hearing, the trial judge stated that "based on my experience, individuals who undertake this type of behavior typically do it more than once with more than one victim, unlike charges like homicide where statistically the likelihood is they're never going to do it again. But in these kind of cases, if it happened once, it's very likely going to happen again." Dkt. 5, Exh. K at 30. At the postconviction motion hearing, petitioner produced two sex offender recidivism studies, *see* dkt. 7, Attachment 3, which show that perpetrators of incest are less likely to reoffend than perpetrators of others types of sexual assault. Petitioner asserts that this proves that the trial judge's statement is inaccurate. The appellate court disagreed, holding that the fact that perpetrators of incest may have a lower rate of recidivism than other sexual offenders does not establish that petitioner presents a low risk to his or other children. The court also noted that petitioner continued to deny his guilt and that the trial court had received information that petitioner had sexual contact with an unrelated 13-year old girl.

Citing *Tucker*, petitioner generally asserts that the appellate court's rejection of his claim was based on either an unreasonable application of Supreme Court precedent or unreasonable determinations of fact. In *Tucker*, the Court held that the trial court imposed a sentence that was "founded at least in part upon misinformation of constitutional magnitude" and that the

13

defendant "'was sentenced on the basis of assumptions concerning his criminal record which were materially untrue.'" *Tucker*, 404 U.S. at 447 (quoting *Townsend*, 334 U.S. at 741). The decision of the state court of appeals was not contrary to or an unreasonable application of this precedent. It was reasonable for the appellate court to conclude that the assumptions made by the trial court were not materially untrue or based on misinformation of a constitutional magnitude. Although the studies cited by petitioner show a relatively low recidivism rate (4 %-10%) for perpetrators of incest, one study explains that "sexual assault is a vastly underreported crime" and "[i]ncest victims who have experienced criminal justice involvement are particularly reluctant to report new incest crimes because of the disruption caused to their family." Dkt. 7, Attachment 3, *Recidivism of Sex Offenders* (May 2001) at 3. Therefore, the trial judge was not wholly inaccurate in assuming that "individuals who undertake this type of behavior typically do it more than once with more than one victim."

Petitioner faults the court of appeals for referring to his uncharged conduct with a 13-year old girl and the fact that he continued to deny the assault of his daughter, arguing that the court incorrectly assumed that the trial court relied on these factors during sentencing and not generalized information about recidivism. However, it is unclear from the appellate court decision whether the court actually reached the issue of reliance. After reviewing the trial court's stated reasons for denying petitioner's motion for resentencing, the court of appeals noted petitioner's denial of guilt and inappropriate conduct with a minor and then found that the information before the lower court was not inaccurate. It is equally reasonable to interpret the appellate court's reference to these other factors as support for its conclusion that petitioner

14

presented a high risk to his children or others.  In any event, because the information that the trial judge relied upon was not inaccurate, any error that the court of appeals may have made with respect to reliance is harmless.

CONCLUSION

Petitioner makes colourable arguments, and the state court of appeals could have reached a different conclusion on either of his claims.  However, it is not the role of this court to second guess the state court's decision.  *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) (a federal habeas court may not conduct independent inquiry into whether state court was correct).  As in this case, "when the constitutional question is a matter of degree, rather than concrete entitlements, a reasonable decision by the state court must be honored." *Lindh*, 96 F.3d at 871; *see also Yarborough*, 541 U.S. at 664 ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").  For the reasons outlined above, the decision of the state court of appeals was well within the bounds of reasonable.

RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B) and for the reasons stated above, I recommend that this court grant Chas Simonson's motion to expand the record, deny the petition of Chas Simonson for a writ of habeas corpus and dismiss this case.

Entered this 19th day of October, 2007.

BY THE COURT:
/s/
STEPHEN L. CROCKER
Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin  53701

Chambers of                                                                                    Telephone
STEPHEN L. CROCKER                                                                     (608) 264-5153
U.S. Magistrate Judge

October 22, 2007

Robert R. Henak
Henak Law Office, S.C.
1223 North Prospect Avenue
Milwaukee, WI 53202

Gregory M. Weber
Assistant Attorney General
P.O. Box 7857
Madison, WI 53707-7857

Re:___Simonson v. Hepp
        Case No. 07-C-397-C

Dear Counsel:

The attached Report and Recommendation has been filed with the court by the
United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an
opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the newly-updated memorandum of the
Clerk of Court for this district which is also enclosed, objections to any portion of the report
may be raised by either party on or before November 9, 2007, by filing a memorandum with
the court with a copy to opposing counsel.

If no memorandum is received by November 9, 2007, the court will proceed to
consider the magistrate judge's Report and Recommendation.

Sincerely,

17

/s/ S. Vogel for
Connie A. Korth
Secretary to Magistrate Judge Crocker

Enclosures
cc:    Honorable Barbara B. Crabb

18